[No. F038052. Fifth Dist. Dec. 12, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
RENE BREAZELL, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I of Discussion.

## COUNSEL

William A. Malloy, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Troy L. Nunley and Maureen A. Daly, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CORNELL, J.**—Rene Breazell pled guilty after her motion to suppress was denied. On appeal, Breazell claims that the evidence against her should have been suppressed. Breazell also claims that the trial court erroneously assessed a fine pursuant to Penal Code section 672[1] because a fine was imposed pursuant to Health and Safety Code section 11372 as well. Breazell contends that a fine pursuant to section 672 can be imposed only if no other statutory fine is imposed for the criminal conduct.

In the unpublished portion of this opinion, we conclude that the trial court committed no error in denying Breazell's motion to suppress and affirm the judgment. In the published portion of this opinion, we agree that the fine imposed pursuant to section 672 was erroneous, and it constitutes an unauthorized sentence. Accordingly, we order that fine stricken.

### FACTUAL AND PROCEDURAL SUMMARY

While riding in an unmarked police van, Special Agent John Gaines received a telephone call from his office informing him that an anonymous informant called and stated that Rene and "Tasha" were manufacturing cocaine base at Breazell's residence in the presence of children. Gaines and his partner, Investigator Staci Lewis, parked near Breazell's residence for observation. Within a few minutes, S. Breazell, Breazell's daughter, emerged from the house. A car drove past the house and turned around,

---

[1] All statutory references are to the Penal Code unless otherwise stated.

stopping in front of Breazell's residence. S. Breazell spoke with the occupants of the vehicle for a moment and the vehicle left. S. Breazell then looked towards Gaines and Lewis for a few moments. Gaines concluded that S. Breazell had identified the van as a police vehicle and that a drug transaction had been aborted.

Gaines drove to Breazell's residence, stopped the van, and got out along with Lewis. Lewis stopped S. Breazell, and Gaines went to the front door of the residence.

Lewis smelled the odor of burnt marijuana emanating from S. Breazell and asked her if she had been smoking marijuana. S. Breazell admitted doing so in the house and admitted she possessed some marijuana. Lewis searched S. Breazell and found marijuana and what she believed to be cocaine base.

Gaines knocked on the front door and asked Breazell if she had any children in the house. Breazell responded by asking the children to come to the door. Breazell first walked into the kitchen and then into the bathroom. Gaines heard sloshing noises coming from the bathroom. He returned to where Lewis was questioning S. Breazell. Lewis told Gaines what she had learned and discovered.

Gaines returned to the house and demanded that one of the children open the door. Gaines entered the house and proceeded to the bathroom. Breazell emerged from the bathroom with her arms wet. Lewis observed water on the bathroom floor and toilet seat, and that the toilet was only half full. Gaines deduced that the toilet was backed up as the result of Breazell's attempting to dispose of narcotics.

Gaines secured the residence and obtained a search warrant. A search revealed numerous empty bags and one containing cocaine base stuck in the throat of the toilet.

The information charged Breazell with a single count of possession of cocaine base for sale. (Health & Saf. Code, § 11351.5.) Two enhancements were alleged, one for a prior narcotics conviction (*id.*, § 11370.2, subd. (a)), and the other for a prior conviction for sale of a controlled substance (*id.*, § 11352; Pen. Code, § 1203.07, subd. (a)(11)). After her motion to suppress was denied, Breazell pled guilty to the sole count of the information and the first enhancement. She was sentenced to eight years in prison.

DISCUSSION

I. *The Search**

. . . . . . . . . . . . . . . . . . . . . . . .

II. *Section 672 Fine*

A. *Permissibility of a Section 672 Fine When a Fine Is Imposed Pursuant to the Health and Safety Code*

 The trial court imposed a fine pursuant to Health and Safety Code section 11372,[5] which authorizes a fine up to $20,000 for persons convicted of the offense committed by Breazell. In addition, the trial court assessed a fine pursuant to section 672.[6] Breazell contends the section 672 fine should not have been imposed because it applies only when no other statutory fine is assessed.

The operative language of section 672 is the second phrase of the first sentence, "in relation to which no fine is herein prescribed." The People agree that a fine pursuant to section 672 can be imposed for any crime punishable by imprisonment, regardless of whether the act is made criminal by the Penal Code, Health and Safety Code, or any other statute. However,

---

*See footnote, *ante*, page 298.

[5]Health and Safety Code section 11372 states: "(a) In addition to the term of imprisonment provided by law for persons convicted of violating Section 11350, 11351, 11351.5, 11352, 11353, 11355, 11359, 11360, or 11361, the trial court may impose a fine not exceeding twenty thousand dollars ($20,000) for each such offense. In no event shall such fine be levied in lieu of or in substitution for the term of imprisonment provided by law for any of such offenses.

"(b) Any person receiving an additional term pursuant to paragraph (1) of subdivision (a) of Section 11370.4, may, in addition, be fined an amount not exceeding one million dollars ($1,000,000) for each such offense.

"(c) Any person receiving an additional term pursuant to paragraph (2) of subdivision (a) of Section 11370.4, may, in addition, be fined an amount not to exceed four million dollars ($4,000,000) for each such offense.

"(d) Any person receiving an additional term pursuant to paragraph (3) of subdivision (a) of Section 11370.4, may, in addition, be fined by amount not to exceed eight million dollars ($8,000,000) for each such offense.

"(e) The court shall make a finding, prior to the imposition of the fines authorized by subdivision (b) to (e), inclusive, that there is a reasonable expectation that the fine, or a substantial portion thereof, could be collected within a reasonable period of time, taking into consideration the defendant's income, earning capacity, and financial resources."

[6]Section 672 states: "Upon a conviction for any crime punishable by imprisonment in any jail or prison, in relation to which no fine is herein prescribed, the court may impose a fine on the offender not exceeding one thousand dollars ($1,000) in cases of misdemeanors or ten thousand dollars ($10,000) in cases of felonies, in addition to the imprisonment prescribed."

the People contend the quoted limiting language applies only if the other fine is prescribed by the Penal Code. Therefore, according to the People, the limiting language of section 672 does not apply to this case because the other fine in the case was imposed pursuant to the Health and Safety Code.

The appellate court in *People v. Clark* (1992) 7 Cal.App.4th 1041 [9 Cal.Rptr.2d 726] agreed with the People's first assertion. The defendant in *Clark* was convicted of possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a). The appellate court held that a section 672 fine could be imposed against the defendant although his violation was not a Penal Code violation. (*Clark*, at p. 1045.) We agree.

To support their second proposition, the People contend the word "herein" must be interpreted to refer only to the Penal Code, because to interpret the section otherwise would render the phrase surplusage.

"Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citations.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].)

Section 672 was enacted in 1872, and has been amended only twice. At the time of its enactment, the Penal Code contained all of the codified criminal law of California. As originally enacted, a fine of $200 was authorized for any crime punishable by imprisonment. In 1949, the section was amended to provide a maximum fine of $500 for misdemeanors and $5,000 for felonies. In 1983, the maximum fines were increased to $1,000 for misdemeanors and $10,000 for felonies. (Stats. 1949, ch. 670, § 1, p. 1169; Stats. 1983, ch. 1092, § 320, eff. Sept. 27, 1983, operative Jan. 1, 1984.)

The Health and Safety Code was not enacted until 1939.

This scant legislative activity and the history of the codification of criminal law demonstrate that the simplified interpretation offered by the

People should be rejected. The language used in section 672 demonstrates that it was meant to provide a fine for offenses for which another statute did not impose a fine. In other words, this is a catchall provision allowing a fine to be imposed for every crime, even if the statute criminalizing the conduct did not specifically authorize a fine. The limiting provision was meant to ensure that a fine pursuant to section 672 would not be imposed if another statute authorized a fine for the offense.

Since a fine pursuant to section 672 may be imposed for offenses not defined in the Penal Code, it would be absurd to allow this provision, intended to impose a fine only when no other statute does so, to result in multiple fines simply because the offense and the associated fine are not defined in the Penal Code. The language of the statute and its history establish that the Legislature did not intend such a result. Accordingly, the trial court erred in imposing a fine pursuant to section 672 when a fine also was imposed pursuant to Health and Safety Code section 11372.

Our interpretation does not render the word "herein" surplusage. Instead, our interpretation gives effect to the intent of the Legislature. The limiting phrase of section 672 is applied to ensure that a fine is not imposed pursuant to this section unless no other fine is imposed for the criminal activity.

B. *Waiver*

The People argue that Breazell waived any objection to the fine by her inaction in the trial court. Breazell acknowledges her failure to object, but asserts that assessment of the fine resulted in the imposition of an unauthorized sentence for which an objection was unnecessary.

■ An unauthorized sentence is a narrow exception to the requirement that the parties raise their claims in the trial court to preserve the issue for appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) Generally, a sentence is unauthorized where it could not have been imposed under any circumstance in the particular case. (*Ibid.*) Common situations where unauthorized sentences occur include violation of mandatory provisions governing the length of confinement. (*Ibid.*) Appellate courts are willing to intervene in such situations because the error is correctable without factual disputes. (*Ibid.*)

■ *People v. Welch* (1993) 5 Cal.4th 228, 235-236 [19 Cal.Rptr.2d 520, 851 P.2d 802] provides a comprehensive list of situations in which the unauthorized sentence concept has been employed. None of the cases cited in *Welch* is similar to this case. *Welch* held that a failure to object to an

unreasonable condition of probation resulted in a waiver of the issue. (*Id.* at p. 237.) *Scott* held that a failure to object results in a waiver of any defects in the trial court's statement of reasons for imposing a sentence. (*People v. Scott, supra,* 9 Cal.4th at p. 348.) The Supreme Court held in *Scott* that waiver applies to sentences imposed in a procedurally or factually flawed manner, although otherwise permitted by law. (*Id.* at p. 354.)

Although this issue does not involve the length of Breazell's confinement, the error is clear and correctable without factual dispute. Moreover, the fine pursuant to section 672 could not have been imposed in the circumstances of this case. Therefore, we conclude that the imposition of a fine pursuant to section 672 was unauthorized and order it stricken.

### DISPOSITION

The judgment is affirmed. The $270 fine imposed pursuant to section 672 is ordered stricken. The trial court is directed to prepare a new abstract of judgment to reflect this change.

Ardaiz, P. J., and Vartabedian, J., concurred.