Filed 4/14/14  P. v. Kerns CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LELAND STANFORD KERNS III,<br><br>Defendant and Appellant. | F066227<br><br>(Super. Ct. No. MCR036148A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea and Mitchell C. Rigby, Judges.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and John G. McLean, Deputies Attorney General for Plaintiff and Respondent.

-ooOoo-

A jury found defendant Leland Stanford Kerns III guilty of transportation of heroin (Health & Saf. Code, § 11352, subd. (a)) and possession of heroin for purposes of sale (Health & Saf. Code, § 11351).  In bifurcated proceedings, the trial court found true the

allegations that Kerns suffered two prior strike convictions (Pen. Code,[1] § 667, subds. (b)-(i)) and served five prior prison terms (§ 667.5. subd. (b)).  Kerns was sentenced to an indeterminate term of 25 years to life in prison, plus a consecutive determinate term of five years.

In this appeal, Kerns contends that:  (1) the trial court abused its discretion in failing to dismiss one of the alleged strike convictions; (2) he is entitled to additional presentence custody credit; (3) the fine imposed under section 672 was unauthorized and must be stricken; (4) the drug program fee must be reversed; and (5) the restitution fine and parole revocation fine must be reduced to $200.

We will modify the judgment to reflect that Kerns has 1,704 days of presentence custody credit and delete the $940 fine imposed under section 672.  In all other respects, we affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

On September 10, 2009, a Madera County Sheriff's detective observed Kerns and his wife in their car; Kerns was driving.  The detective saw Kerns pull over and then a woman leaned in the passenger window, stood up with her right hand coming out of the car, and walked away.  Based on his training and experience, the detective believed this was a hand-to-hand narcotic transaction.  Kerns and his wife were detained.  An officer searched Kerns and found a sewn-in pocket inside his pants that contained two clear plastic bags that appeared to contain a usable amount of heroin.

On March 22, 2010, the Madera County District Attorney filed a two-count information against Kerns and his wife.  Kerns was charged with transportation of heroin (Health & Saf. Code, § 11352, subd. (a); count 1) and possession of heroin for purposes of sale (Health & Saf. Code, § 11351; count 2).  It was further alleged that Kerns had three prior convictions for serious or violent felonies (i.e., strike convictions under the

[1]Subsequent statutory references are to the Penal Code unless noted otherwise.

2.

Three Strikes law) (§ 667, subds. (b)-(i)) and had served five prior prison terms (§ 667.5, subd. (b)).

On April 27, 2011, Kerns filed an invitation to the court to exercise its discretion to dismiss the alleged prior strike convictions under section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero* motion). He asserted that the first alleged strike conviction, a burglary conviction from 1980, did not qualify as a strike because the incident involved a commercial burglary. The two remaining alleged strikes arose from Kerns's convictions on October 27, 1981, in Madera County of residential burglary and rape (1981 case). Kerns argued that these strike convictions should be dismissed for three reasons. First, he has not displayed a violent nature since 1981 as his later convictions were drug related. Given his "non-strike" history since 1981, he argued, "this case is not in the spirit of the [Three] Strikes law." Second, "there is a reasonable question as to [his] guilt of the two 1981 strikes." Third, when he was sentenced in the 1981 case, one of the felonies was stayed under section 654 and, since then, courts have treated the 1981 case as one strike, not two. He urged the court to treat the two convictions from 1981 as one strike conviction.

In support of his argument that there was reason to question his guilt in the 1981 case, Kerns pointed out that he has always maintained his innocence and "certain questionable aspects of the police reports from the incident … suggest that [he] could not have been the perpetrator." The victim reported that her attacker was a white male with a rough face and he spoke with a Mexican accent, but Kerns had an unblemished face and speaks without a Mexican accent. The victim told the police that she bit her attacker on his arm, but there was no evidence Kerns had a bite mark on his body. The victim reported that her attacker asked her what street they were on, suggesting he was unfamiliar with Madera, but Kerns was familiar with the area and had lived in Madera for more than a year prior to the incident. Even though fingerprints were taken from the scene and a rape kit was collected from the victim, no physical evidence connected Kerns

to the crimes. He submitted police reports, including the victim's statement, from the incident and the probation officer's report from the 1981 case.

The People filed a response arguing that Kerns's case was not outside the spirit of the Three Strikes law. They described the underlying facts of the 1981 case. Kerns entered the home of the victim who was asleep in bed. He woke her, grabbed her by the hair, and forced her into her living room. The victim struggled and one of her children entered the room. Kerns ordered the victim to make her child go back to bed and then he raped her. The People did not address Kerns's argument that he may not be guilty of that crime.

On May 13, 2011, the trial court heard argument on the *Romero* motion. His defense attorney reiterated that, while Kerns had been in and out of prison his whole adult life, he had no subsequent convictions for any serious or violent felonies after 1981. He acknowledged that Kerns was found guilty by a jury in the 1981 case but asserted there were "some real questions" about whether he had committed those crimes. The People argued that Kerns's position that he did not actually commit the crimes in the 1981 case "is not a proper basis under the law" for dismissing the prior strike convictions.

The trial court declined to dismiss any of the strike convictions. First, it agreed with the People that it was "barred from looking behind that conviction [in the 1981 case]." The court stated: "The conviction was made following a jury trial, there was no appeal on that. Or if there was, it was sustained on appeal. It's a valid conviction, and I don't think a Romero invitation is a basis to attack the conviction itself. [¶] … I am looking at that judgment being in place and not subject to the attack by the Court in its analysis here."

Next, the court declined to treat the burglary and rape convictions from the 1981 case as a single strike. The court explained its reasoning: "While the convictions may have arisen out of a single transaction, it does not appear that they arose out of a single act here. So I don't think that this would come within the rule of the *Benson* case [*People*

*v. Benson* (1998) 18 Cal.4th 24] .… I don't see this as being a single strike for that reason. So I don't hold it to be a single strike. And given the circumstances, I do not find that it is appropriate to strike a strike in this matter." The court did not address Kerns's assertion that the 1980 burglary conviction (on which the first strike allegation was based) did not qualify as a strike conviction.

A jury trial began on July 31, 2012. The prosecutor requested amendment of the information to delete the allegation that Kerns had a strike conviction in 1980, agreeing with Kerns that his second degree burglary conviction was not a strike. The court dismissed the strike allegation. This left the two strike allegations based on the 1981 case. At Kerns's request, the court bifurcated trial on the allegations of the prior strike convictions and prior prison terms.

The jury reached a verdict on August 8, 2012, finding Kerns guilty of both counts. The trial court then found true the allegation that Kerns had two prior strike convictions and had served five prior prison terms.

At the sentencing hearing on October 19, 2012, Kerns renewed his *Romero* motion to dismiss (or rather, to vacate) one of the two prior strike convictions. His attorney pointed out that Kerns was cooperative with the police and his crime was "[s]mall time" and only done to support his own drug habit. Kern's attorney noted that, in a criminal case in 1995, Judge Moffat had dismissed one of the strike convictions from the 1981 case. The prosecutor opposed the motion. Referring to the 1995 case, the prosecutor argued: "People's position is he had the benefit of giving that mercy or that grace of the court that time and he could have been sentenced to 25 to life on that case. He received that benefit and then when he gets out he continues to have violations of his parole and returns to prison numerous times, then picks up this case doing the same exact thing he did before."

Kerns's attorney again questioned the reliability of the convictions in the 1981 case and told the court he had been appointed to seek DNA testing in that case. The court

suggested that discussing the possibility of having the 1981 conviction set aside based on DNA evidence was "putting the cart before the horse …." The court observed, "So right now what I have before me is a prior rape conviction that is a strike and if it occurs that that conviction is set aside then I'm sure that it would have an impact on any sentence that I were to impose today."

The trial court denied the renewed *Romero* motion. In reaching its conclusion, the court stated it considered among other things[2] Kerns's "long and continuous history of criminal activity"; that the strike convictions occurred almost 30 years before the current crimes; that the recent convictions were drug related and nonviolent offenses; and the facts that Kerns suffers from drug addiction and has failed to address his addiction. It also recognized the impact of Kerns's criminal behavior on his family and on society, observing, "There are victims out there who are being sold heroin by Mr. Kerns."

Kerns received an indeterminate term of 25 years to life on count 1, plus a consecutive determinate term of five years for the five prior prison terms. The court imposed a term of 25 years to life on count 2 and stayed the term under section 654. The court also imposed restitution fines, a fine of $940 under section 672, and lab analysis and drug program fees. The court did not impose a presentence report fee of $750, which the probation officer had recommended.

Kerns filed a notice of appeal on November 29, 2012.

## *DISCUSSION*

### I.     *Denial of request to dismiss prior strike convictions*

Under section 1385, subdivision (a), a judge "may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." In *Romero*, *supra*, 13 Cal.4th at page 504, our Supreme Court

---

[2]The court stated, "[T]his is not an exhaustive list of considerations, but included in the factors that I considered."

held that, pursuant to section 1385, "a trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony …." (*People v. Williams* (1998) 17 Cal.4th 148, 158 (*Williams*).)

In deciding whether to dismiss or vacate a prior strike conviction allegation or finding under section 1385 and *Romero*, a court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.)

We review for abuse of discretion a trial court's decision not to dismiss or vacate a prior strike conviction allegation or finding. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) If, however, "the record *affirmatively* discloses that the trial court *misunderstood* the scope of its discretion, remand to the trial court is required to permit that court to impose sentence with full awareness of its discretion …." (*People v. Fuhrman* (1997) 16 Cal.4th 930, 944.)

Kerns contends that the trial court abused its discretion in failing to dismiss one of the alleged strike convictions. He argues that "the court's decision was reached without consideration of relevant circumstances of the alleged strikes case." We are not persuaded that reversal and remand is called for in this case.

First, Kerns asserts, in the denial of his pretrial *Romero* motion, the court "apparently denied relief under the mistaken belief that unless the two strike offenses were based on the 'same act,' the court could not dismiss one of the strikes." We reject Kerns's assertion that the court held a mistaken belief about its discretion to dismiss one of the strike conviction allegations.

In *People v. Benson, supra,* 18 Cal.4th at page 26, the Supreme Court held that, where a defendant had two prior strike convictions—residential burglary and assault with intent to commit murder—that arose out of the same set of facts and resulted in the stay of the sentence for one of the convictions under section 654, each conviction individually qualified as a separate strike under the Three Strikes law. In reaching this holding, the court observed in a footnote:

> "Because the proper exercise of a trial court's discretion under section 1385 necessarily relates to the circumstances of a particular defendant's current and past criminal conduct, we need not and do not determine whether there are some circumstances in which two prior felony convictions are so closely connected—for example, when multiple convictions arise out of a single act by the defendant as distinguished from multiple acts committed in an indivisible course of conduct—that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors." (*People v. Benson*, *supra*, 18 Cal.4th at p. 36, fn. 8.)

In our case, the court stated: "While the convictions may have arisen out of a single transaction, it does not appear that they arose out of a single act here. So I don't think that this would come within the rule of the *Benson* case .… I don't see this as being a single strike for that reason. So I don't hold it to be a single strike. And given the circumstances, I do not find that it is appropriate to strike a strike in this matter."

This does not indicate that the court misunderstood the scope of its discretion. To the contrary, the court understood that, as suggested in the footnote in *Benson*, if two prior convictions arise out of a single act, the trial court may be required to dismiss one of the prior convictions. In such circumstances, *not* to dismiss one of the prior convictions may be an abuse of discretion. The court considered the *Benson* footnote and found that Kerns's prior convictions did not arise out of a single act. As a result, dismissal of one of the prior convictions was not *required*. ("So I don't think that this would come within the rule of the *Benson* case .…") The court then went on to consider, in the exercise of its discretion, whether to dismiss one of the strikes and decided not to do so. ("And given

8.

the circumstances, I do not find that it is appropriate to strike a strike in this matter.")
This was not an abuse of discretion.

Second, Kerns claims both before trial and after the verdict that the court expressly declined, in exercising discretion, to consider the possibility that Kerns was not guilty of the crimes he was convicted of in the 1981 case. He argues, "The failure to dismiss one of [Kerns's] strikes upon expressly refusing to consider the relevant circumstances of the questionable validity of the conviction and likelihood of mistaken identification in that case, was an abuse of discretion." The People respond that it would have been an abuse of discretion for the trial court to give any serious consideration to Kerns's claim of innocence because the record contained "virtually no evidence to undermine the 1981 convictions."

As we have discussed, in deciding a *Romero* motion, a trial court must consider, among other things, the nature and circumstances of the prior strike convictions. (*Williams*, *supra*, 17 Cal.4th at p. 161.) We question the premise of Kerns's claim, however, that the consideration of the nature and circumstances of prior strike convictions includes entertaining collateral attacks on valid convictions.[3] We need not decide the issue, however, because we agree with the People that Kerns failed to provide evidence

---

[3]We observe, for example, the Supreme Court has held that, "a defendant whose sentence for a noncapital offense is subject to enhancement because of a prior conviction may not employ the current prosecution as a forum for challenging the validity of the prior conviction based upon alleged ineffective assistance of counsel in the prior proceeding." (*Garcia v. Superior Court* (1997) 14 Cal.4th 953, 966.) In so holding, the court observed: "Such a claim [of ineffective assistance of counsel] often will necessitate a factual investigation with regard to counsel's actions, omissions, and strategic decisions, requiring the parties and the court to reconstruct events possibly remote in time, and to scour potentially voluminous records, substantially delaying the proceedings related to the current offense. Conducting evidentiary hearings on these types of claims also would protract substantially the proceedings on the current offense." (*Id*. at p. 965.) Similarly, a rule requiring the court to consider a claim of factual innocence of a valid prior conviction in deciding a *Romero* motion could require, in essence, a retrial of prior offenses.

the trial court reasonably could have relied on to determine he was innocent of the rape and burglary in the 1981 case. He submitted a few police reports, but he did not provide a record of the trial or information about any appeal. He noted that the jury found him guilty based on "identification," not DNA or fingerprints, but he did not provide the witness testimony from trial. He offered no evidence to show that the victim was an unreliable witness. Under these circumstances, it would have been an abuse of discretion if the trial court *had* dismissed the prior strike convictions on the ground that Kerns was innocent in the 1981 case. In other words, even assuming that in deciding a *Romero* motion a court is allowed or required to consider a defendant's claim that he is not guilty of valid prior strike convictions, there was no prejudice from the trial court's failure to consider Kerns's claim of innocence in this case.[4]

In his reply, Kerns argues that he was not asserting factual innocence as the basis for his *Romero* motion but, rather, "the fact that the evidence in the prior case is far less than solid and substantial on the issue of identity of the burglar/rapist." To the extent his argument is that a trial court must consider the *quality* of the evidence that supported the prior strike convictions without regard to whether the defendant was correctly convicted, we fail to see how this is relevant in deciding a *Romero* motion.

## II.    *Presentence custody credit*

The abstract of judgment shows that Kerns has 1,103 actual days in custody, plus 550 conduct credits for a total of 1,653 days of presentence custody credit. The parties agree, however, that Kerns is entitled to 1,704 days presentence custody credit.

Kerns was arrested on September 10, 2009, and was sentenced on October 19, 2012. Counting the day of arrest and the day of sentencing, Kerns was in custody 1,136

---

[4]Since it would have been an abuse of discretion for the trial court to conclude that Kerns was innocent in the 1981 case, it also would have been an abuse of discretion for the court to surmise that he became a heroin addict in prison "in despair of being wrongfully convicted" as Kerns suggests in his opening appellate brief.

days.  (See *In re Jackson* (1986) 182 Cal.App.3d 439, 442-443 ["law normally views a fraction of a day as a full day"].)  He is also entitled to two days of conduct credit for every four days in actual custody, which gives him 568 days of conduct credit.  (Former § 4019, subd. (f), as amended by Stats. 1982, ch. 1234, § 7.)  Accordingly, we will modify the judgment to reflect that Kerns has 1,136 days of actual custody credit and 568 days of conduct credit.

## III.    Fines and fees

Kerns also challenges the fines and fees the trial court imposed.

### A.    Fine under section 672

The trial court imposed a fine of $940 under section 672, consisting of a base fine of $200 plus attendant fees, assessments, and surcharges (assessments) for that base fine. The court also imposed a "Lab Analysis Fee" of $200, consisting of a "Base Fine" of $50 pursuant to Health and Safety Code section 11372.5, plus assessments, and a "Drug Program Fee" of $400, consisting of a "Base Fine" of $100 pursuant to Health and Safety Code section 11372.7, subdivision (a), plus assessments.

Kerns contends that the trial court was not allowed to impose a section 672 fine in addition to the lab analysis fee and drug program fee.  He did not raise this objection at the sentencing hearing.

Section 672 provides, "Upon conviction for any crime punishable by imprisonment in any jail or prison, in relation to which no fine is herein prescribed, the court may impose a fine on the offender not exceeding one thousand dollars ($1,000) in cases of misdemeanors or ten thousand dollars ($10,000) in cases of felonies, in addition to the imprisonment prescribed."

For Kerns's two convictions (violation of Health & Saf. Code, §§ 11351 & 11352), Health and Safety Code section 11372 provides that a court may impose a fine not exceeding $20,000 for each offense.

In *People v. Breazell* (2002) 104 Cal.App.4th 298, 304 (*Breazell*), this court held that a trial court could not impose a fine pursuant to Health and Safety Code section 11372 and another fine pursuant to section 672. We explained:

> "The language used in section 672 demonstrates that it was meant to provide a fine for offenses for which another statute did not impose a fine. In other words, this is a catchall provision allowing a fine to be imposed for every crime, even if the statute criminalizing the conduct did not specifically authorize a fine. The limiting provision was meant to ensure that a fine pursuant to section 672 would not be imposed if another statute authorized a fine for the offense." (*Breazell*, *supra*, 104 Cal.App.4th at p. 304.)

We concluded, "the trial court erred in imposing a fine pursuant to section 672 when a fine also was imposed pursuant to Health and Safety Code section 11372." (*Breazell*, *supra*, 104 Cal.App.4th at p. 304.) We went on to hold that the defendant in *Breazell* did not forfeit her appellate challenge to the imposition of two fines even though she failed to object with the trial court. We considered the issue because "the error [was] clear and correctable without factual dispute" and "the fine pursuant to section 672 could not have been imposed in the circumstances of [the] case." (*Id.* at p. 305.)

Here, the trial court did not impose a fine under Health and Safety Code section 11372, but Kerns argues that the lab analysis fee and drug program fee similarly preclude the imposition of a section 672 fine. Health and Safety Code section 11372.5, subdivision (a), provides that a court shall impose a criminal laboratory analysis fee of not more than $50 for each conviction of, among other statutes, Health and Safety Code sections 11351 and 11352. It is described as a "fee," but case law has determined it to be a fine. (*People v. Sharret* (2011) 191 Cal.App.4th 859, 869.) In addition, we have recognized that the drug program fee (Health & Saf. Code, § 11372.7, subd. (a)) is "a fine and/or a penalty." (*People v. Sierra* (1995) 37 Cal.App.4th 1690, 1696.) Accordingly, we agree with Kerns that the trial court in this case was not authorized to impose an additional fine under section 672, which is "not … imposed if another statute authorize[s]

12.

a fine for the offense." (*Breazell*, *supra*, 104 Cal.App.4th at p. 304.)  The section 672 fine of $940 must be stricken from the judgment.

###### B.    *Drug program fee*

Kerns next argues that the drug program fee must be stricken because there is insufficient evidence to support the trial court's implied finding that he had the ability to pay the fee.  As we have described, the court imposed a drug program fee of $400, consisting of a base fine of $100 pursuant to Health and Safety Code section 11372.7, subdivision (a), plus assessments.

Health and Safety Code section 11372.7 provides for a drug program fee not to exceed $150 for each separate offense.  (§ 11372.7, subd. (a).)  The court is required to determine whether the defendant has the ability to pay the drug program fee.  (*Id*., subd. (b).)  No express finding is required, however, and the parties agree that, in this case, the trial court made an implied finding that Kerns had the ability to pay the drug program fee.  (*People v. Staley* (1992) 10 Cal.App.4th 782, 785; see Evid. Code, § 664.)

At the sentencing hearing, Kerns's attorney argued that Kerns had a substantial amount of time to serve and he "[h]as no real means to pay any fines that I'm aware of."  The probation officer's report, however, noted that Kerns was in good physical and mental health and that he had been working for a temporary agency "off and on."  "Ability to pay does not necessarily require existing employment or cash on hand."  (*People v. Staley*, *supra*, 10 Cal.App.4th at p. 785.)  Instead, ability to pay a fine may be "based upon an ability to earn."  (*Id*. at p. 786.)  The People point out that able-bodied prisoners are required to work under section 2700.  "Whenever an inmate is paid for his labor … and is discharged, all sums due him shall be paid upon release."  (§ 2713.)  Thus, it appears Kerns will be able to earn money from labor while in prison.  This is sufficient evidence to support a finding of ability to pay the $400 drug program fee.

### C.     *Restitution and parole revocation fine*

Finally, Kerns contends that the restitution fine and corresponding parole revocation fine should be reduced to $200. The trial court imposed a restitution fine of $240. He argues that the court believed $240 was the minimum amount it could impose as a restitution fine, but the statutory minimum was actually $200.

Kerns committed his current offenses on September 10, 2009. At that time, section 1202.4 provided for a restitution fine of not less than $200 and not more than $10,000. (Former § 1202.4, as amended by Stats. 2008, ch. 468, § 1.) When Kerns was sentenced in 2012, the law provided for a restitution fine of not less than $240 and not more than $10,000. (Former § 1202.4, as amended by Stats. 2011, ch. 358, § 1.)

Kerns's argument is premised on the assumption that the trial court intended to impose the minimum restitution fine and used the wrong statutory minimum, but the court did not expressly state that it intended to impose the minimum fine possible, and we will not presume the trial court applied the wrong statute. "It is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties." (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.)

Kerns raises an ex post facto argument, but there is no ex post facto problem here. The restitution fine of $240 was authorized under the law applicable at the time Kerns committed his crimes. (Cf. *People v. Zito* (1992) 8 Cal.App.4th 736, 740-741 [where pre-1990 law provided restitution fine could not exceed $10,000, ex post facto prohibition applied so that restitution fine could not exceed $10,000 for pre-1990 losses].) Further, as the People assert, Kerns forfeited his challenge to the restitution fine by failing to raise the issue with the trial court. (*People v. Turrin* (2009) 176 Cal.App.4th 1200, 1207.)

For these reasons, we reject Kerns's claim that his restitution fine must be reduced.

14.

## *DISPOSITION*

The judgment is modified: (1) to reflect an award of 1,704 days of presentence custody credit, consisting of 1,136 days of actual time credit and 568 days of conduct credit and (2) to delete the $940 fee under section 672. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

_____
LaPorte, J.*

WE CONCUR:


_____
Levy, Acting P.J.


_____
Detjen, J.

---

*Judge of the Superior Court of Kings County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.