Filed 10/13/22  P. v. Kroupa CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | B322611 |
| Plaintiff and Respondent, | (Madera County Super. Ct. No. MCR059249) |
| v. | |
| ROGER ROYAL KROUPA, | |
| Defendant and Appellant. | |


APPEAL from the judgment of the Superior Court of Madera County, Dale J. Blea, Judge.  Affirmed.

Donn Ginoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant

Attorney General, Julie A. Hokans and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Roger Royal Kroupa (defendant) was convicted of first degree burglary with a person present (Pen. Code, § 459)[1] and was sentenced to a "third strike" sentence of 25 years to life. On appeal, defendant does not challenge his convictions. Instead, he argues that his sentence is invalid because the trial court erred (1) in not granting his motion to dismiss one or both of his prior "strike" offenses, (2) in not assessing his ability to pay before imposing $1,300 in fines and assessments, and (3) in imposing a $960 fine under section 672. Because these arguments lack merit, we affirm.

FACTS AND PROCEDURAL BACKGROUND

## I.  Facts

On a Friday morning in April 2018, defendant was a 51-year-old man who had been recently released from incarceration and was walking from Madera to Fresno, California. He approached the side door of the mobile home owned by 66-year-old Linda Bosch (Bosch). Bosch saw him, and asked him if he was lost and needed any help. Defendant ignored her questions and continued toward the side door. Bosch told him not to "come any further" because she did not "know [him]," but defendant again ignored her, walked into her mobile home, and pushed Bosch out of his way after she told him not to "come in[side]."

Over the next several hours, defendant proceeded to make himself at home in Bosch's mobile home. He helped himself to cereal and carved up a chicken. He used—and clogged up—her

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

2

toilet. He went through her medicine cabinet and her purse. He left his dirty clothes strewn on the ground. He took a shower. He went through her clothes, and even put on a pair of sweatpants. And then he took a nap on her sofa. By the time he was done, Bosch's home was trashed.

Defendant did not heed anyone's pleas or warnings to stop. He ignored Bosch's initial pleas to not enter and to leave. When Bosch soon thereafter left her home to tell her 73-year-old brother about Bosch's entry, the brother went into the home to confront defendant. Defendant was at that moment carving the chicken, and with a knife in his hand told the brother, "These knives have killed people" or "I kill people with these knives." After Bosch and her brother then summoned the police, the police asked defendant to exit—both over a public address system and by calling defendant on Bosch's cell phone, which was still inside her house. Defendant refused the police's initial requests to leave and then ignored all further police contact, leading to a four-hour standoff that ended when a SWAT team breached the mobile home's exterior to find defendant asleep on Bosch's living room sofa.

## II. Procedural Background

The People charged defendant with (1) first degree burglary for entering the inhabited portion of a residence (§ 459), (2) assault with a deadly weapon (for defendant's threats with the knife to Bosch's brother) (§ 245, subd. (a)(1), (3) making criminal threats (for his statements to the brother) (§ 422), and (4) misdemeanor battery (for pushing Bosch) (§ 242). The People alleged that defendant had two convictions that constituted "strikes" within the meaning of our Three Strikes Law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i))—namely, a (1) 1990

3

conviction for first degree burglary, and (2) a 1993 conviction for robbery.

A jury convicted defendant of the first degree burglary and misdemeanor battery counts, but hung on the assault with a deadly weapon and criminal threat counts. In a bifurcated proceeding, the jury also found true the "strike" allegations.

The matter proceeded to sentencing.

Defendant moved the court to dismiss one or both prior "strike" allegations. The trial court denied the motion with a lengthy oral explanation. The court examined "the nature of the current offenses." Specifically, the court noted that defendant "gain[ed] access" to Bosch's residence by ignoring her entreaties and then pushing the 66-year-old woman out of the way, which placed Bosch "in fear for her life." The court examined defendant's criminal history and prospects. That history included not only the two prior strikes but also five other felony convictions and 14 misdemeanor convictions (three of which were initially felonies that had been later reduced to misdemeanors by changes in the law). That history also included "11 violations of post-conviction supervision." To the court, defendant's "continuing and persistent criminal history with no indication of abatement" reflected "either an inability or [an] unwillingness to participate in rehabilitation" and "le[d the court] to the conclusion that the likelihood of [defendant] re-offending is substantial." The court examined defendant's "background and character." Specifically, the court looked at the effect of a head trauma injury defendant suffered several years prior and defendant's "drug history," but found that neither of them substantially mitigated the severity of defendant's crime because a psychologist who had examined defendant indicated he "was

4

able [to] appreciat[e] the wrongfulness of his actions" and because "there was no evidence that [defendant] was under the influence of a controlled substance at the time" of the crimes. The court summed up by noting that defendant "is a habitual criminal" and hence "the very type of criminal at whom the [Three Strikes] sentencing scheme is directed." Because "[t]he present case is not outside of the spirit or intent of the Three Strikes sentencing scheme," the court concluded that "the interest of justice would not be served by striking" any prior "strikes."

The court then imposed the third strike sentence dictated by the Three Strikes Law—namely, 25 years to life for the burglary; the court also imposed a time-served sentence for the misdemeanor battery. The court imposed a $960 fine for the burglary count, a $40 fine for the misdemeanor battery count, and a $300 restitution fine; the court imposed but suspended a $300 parole revocation fine. The court then dismissed the two counts on which the jury hung.

Defendant filed this timely appeal.[2]

## DISCUSSION

### I. Motion to Dismiss "Strikes"

Defendant argues that the trial court erred when it denied his motion to dismiss the prior "strike" allegations. We review such denials for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373 (*Carmony*).)

A trial court has the discretion to dismiss a "strike" allegation under California's Three Strikes Law. (§ 1385, subd. (a); *People v. Williams* (1998) 17 Cal.4th 148, 162.) In deciding

---

[2] On August 9, 2022, our Supreme Court transferred this matter from the Fifth Appellate District to the Second Appellate District.

whether to exercise this discretion, the court is instructed to "'consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'" (*Carmony*, *supra*, 33 Cal.4th at p. 377.) There is a "strong presumption" against granting a motion to dismiss a strike. (*Id.* at p. 378.)

Because the trial court's thorough explanation of why it was denying defendant's motion touched on all of the above-enumerated factors relevant to such motions, defendant offers two broad categories of reasons why, in his view, the court's denial nevertheless constitutes an abuse of discretion.

First, defendant argues that the trial court's analysis contains several legal errors that invalidate its exercise of discretion. (E.g., *In re Marriage of Wendt & Pullen* (2021) 63 Cal.App.5th 647, 658 ["legal error is abuse of discretion"].) To begin, defendant asserts that the trial court did not explicitly reject each and every one of the arguments he raised in his motion. This assertion is factually unsound because the trial court stated that it "considered the arguments made in [the] motion to strike" and is legally unsound because trial courts are deemed to have considered all relevant factors unless the record indicates otherwise and here it does not (*People v. Myers* (1999) 69 Cal.App.4th 305, 310; *People v. Kelley* (1997) 52 Cal.App.4th 568, 582). Notably, some of the considerations defendant on appeal accuses the trial court of not addressing—such as his motivation for the crime (namely, that he was homeless) and the

6

unfortunate circumstances of his early life (namely, that his mother died of a heroin overdose and that his father was murdered in front of him when he was three years old)—were never argued in his motion; a trial court is certainly not at fault for failing to address an argument never made to it. Further, defendant contends that the trial court impermissibly gave "overwhelming, yet uncritical weight" to defendant's prior record "to the exclusion" of all other factors, and hence did not consider "the mitigating circumstances of [defendant's] current offense and personal circumstances." To the extent defendant is arguing that the court committed a legal error by refusing to consider any mitigating aspects of defendant's current offense and his personal circumstances, the record is to the contrary and there is no legal error.

Second, defendant expresses his disagreement with *how* the trial court weighed the relevant circumstances.

As a threshold matter, all of these arguments effectively ask us to weigh the factors differently than the trial court, but there is no abuse of discretion as long as the trial court's weighing is reasonable—even if we might weigh the factors differently. (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

More to the point, the trial court's weighing of the factors defendant assails on appeal was reasonable.

Defendant asserts that the trial court gave insufficient weight to his drug addiction, and suggests that *People v. Garcia* (1999) 20 Cal.4th 490 (*Garcia*)—in conjunction with the bevy of recent laws allowing for prosecutorial diversion of persons with drug addictions—require courts to give a defendant's drug problems dispositive weight. But the court, based on defendant's own admission that he was not using drugs or alcohol at the time

7

of the charged crimes and that his heroin addiction had been "steadily declin[ing]" in recent years, reasonably concluded that defendant's seemingly "erratic and at times bizarre" "behavior" was not the product of a drug addiction and hence the addiction had "no effect on his actions or his responsibility for his actions." And *Garcia* merely holds that drug history is *relevant* to a motion to dismiss prior "strikes" (*id*. at pp. 494, 503); neither *Garcia* nor any recent laws make such history *dispositive*.

Defendant asserts that the trial court gave insufficient weight to his mental health issues arising out of a head injury a few years before, contending that the court was wrong to rely on a psychologist's report finding defendant competent to stand trial. This assertion misreads the record. The psychologist's report was *not* about competency to stand trial, but instead indicated that defendant "was capable of appreciating the wrongfulness of his actions" "*at the time of the instant offenses*." (Italics added.) Thus, the court acted reasonably in concluding that defendant's mental health was not a mitigating factor.

Defendant asserts that the trial court gave insufficient weight to the mitigating factors relevant to the current offenses and his criminal history. Defendant asserts that the current offenses "involved" "little true violence," and that his only use of violence was pushing Bosch after she pushed him, such that this crime is only "*technically* a burglary." (Italics added.) The trial court reasonably rejected defendant's characterization of the primarily charged crime. Not all first degree burglaries involve the *use* of violence; indeed, it is the *potential* for violence when a person breaks and enters into a residence when someone is home that makes such burglaries a "serious" and "violent" felony in the nomenclature of the law. (§§ 1192.7, subd. (c)(18), 667.5, subd.

8

(c)(21).) That does not make them "technical" burglaries. The trial court also considered the age of defendant's two prior strikes—in 1990 and in 1993—but determined that their age was of less importance given defendant's steady stream of convictions between his release from prison on the 1993 conviction and his criminal conduct in this case. This was entirely reasonable. (*People v. Gaston* (1999) 74 Cal.App.4th 310, 321-322 [age of prior strikes relevant when defendant "led a crime-free life" in the interim, but not when he has "committed an unending series of felonies, as well as other crimes . . ."].)

In sum, the record showed defendant to be a lifelong criminal who took what he wanted when he wanted—and regardless of the consequences. The trial court did not abuse its discretion in concluding that he was a dangerous repeat offender falling within the heartland of the Three Strikes Law whose conduct in this case did not warrant a lower sentence.

## II.    Imposition of Fines and Fees

### A.    *Lack of finding of ability to pay*

Defendant argues that the trial court erred in imposing $1,300 in fines and assessments without first determining that he had the ability to pay them.[3] For support, he cites *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). These are constitutional questions resting on undisputed facts, so our review is de novo. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1154.) We reject defendant's argument for three reasons.

---

[3]    Although the court also imposed an additional $300 as a parole revocation fine, that amount was suspended, so it is not currently an outstanding fine or assessment. We accordingly do not consider it in our analysis.

9

First, defendant has forfeited this challenge. His sentencing occurred more than 20 months after *Dueñas* was handed down, yet he did not raise this issue. This constitutes a forfeiture. (*People v. Flowers* (2022) 81 Cal.App.5th 680, 687.) Defendant responds that the failure to assess his ability to pay means that the resulting imposition of fines and assessments constitutes an "unauthorized sentence" that can be attacked at any time. He is wrong. (*People v. Torres* (2020) 44 Cal.App.5th 1081, 1085 [imposition of fines and assessments without an ability-to-pay finding is not an "unauthorized sentence"], revd. on other grounds, *In re G.C.* (2020) 8 Cal.5th 1119; *People v. Avila* (2009) 46 Cal.4th 680, 729 [same].)

Second, and even if we were to overlook this forfeiture,[4] we have held that *Dueñas* is wrongly decided and have declined to follow it. (*People v. Hicks* (2019) 40 Cal.App.5th 320, 322.)

Third, and in the event our Supreme Court endorses *Dueñas* in its pending review of that decision in *People v. Kopp*, review granted Nov. 13, 2019, S257844, we conclude that defendant has not established a violation of *Dueñas*. Defendant "points to no evidence in the record supporting his inability to pay." (*People v. Gamache* (2010) 48 Cal.4th 347, 409.) Rather, evidence in the record indicates that defendant had some ability to pay at the time of sentencing. Although defendant was described as "homeless" and "unemployed" at the time of the incident, he was "living off the proceeds of a prior legal settlement." Further, the court may consider future prison wages when assessing ability to pay. (*People v. Montes* (2021) 59

---

4       Our decision to reach the merits notwithstanding the forfeiture obviates the ineffective assistance of counsel claim defendant makes.

10

Cal.App.5th 1107, 1122; *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837.) Even at the lowest-wage prison job (which pays $12 per month), defendant has the ability to earn $1,300 as prison wages during his minimum incarceration as it would take him approximately nine years and one month to earn that amount. (See *People v. Johnson* (2019) 35 Cal.App.5th 134, 139 ["The idea that [defendant] cannot afford to pay $370 while serving an eight-year prison sentence is unsustainable."].) And to the extent defendant argues that the fines and assessments constitute cruel and unusual punishment, we reject the claim that the monetary obligations here are "grossly disproportional to the gravity of [defendant's] offense." (See *United States v. Bajakajian* (1998) 524 U.S. 321, 334, superseded by statute on other grounds as stated in *United States v. Jose* (1st Cir. 2007) 499 F.3d 105, 109-110.) Applying these factors, we conclude that the $1,300 obligation imposed in this case is not out of proportion to the seriousness of first degree burglary and misdemeanor battery.

### B. *Imposition of fine under section 672*

Defendant argues that the $960 fine, comprised in part of a $200 base fine, imposed pursuant to section 672 is unauthorized. Specifically, he argues that section 1202.5 sets a maximum $10 base fine for burglary and precludes the imposition of any further fine, including one under section 672. Because this argument turns on a question of statutory interpretation, our review is de novo. (*Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183.)

Section 672 provides that a "court may impose a [base] fine" of up to $10,000 "[u]pon conviction for any crime punishable by imprisonment." (§ 672.) This statute authorizes the trial court's

11

imposition of a $200 base fine for the first degree burglary conviction to which defendant was sentenced to 25 years to life in prison. Defendant urges that section 1202.5 precludes the imposition of *any* fine under section 672 because section 1202.5 requires a court to "order the defendant to pay a fine" of $10 "[i]n any case in which [the] defendant is convicted of" burglary. (§ 1202.5, subd. (a).) The flaw in defendant's argument is that it utterly ignores that the $10 base fine due under section 1202.5 is to be "in addition to any other penalty or fine imposed." (*Ibid.*) Given the fact that section 1202.5 is *on its face* cumulative to other fines, the argument that section 1202.5 somehow precludes a fine under section 672 is without merit. (*People v. Uffelman* (2015) 240 Cal.App.4th 195, 197 (*Uffelman*) [so holding].)

Defendant urges us to reject *Uffelman* and instead to follow *People v. Breazell* (2002) 104 Cal.App.4th 298 (*Breazell*), which held that a fine may not be imposed under section 672 when a provision of the Health and Safety Code already required the imposition of a fine up to $20,000. (*Id.* at pp. 302-305.) Because the secondary fine imposed under section 1202.5 in this case by its very terms contemplates that it is "in addition" to other fines, *Breazell* is inapt and we find *Uffelman* to be persuasive.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

13